[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13263

_____

BALBOA CAPITAL CORPORATION,

                                        Plaintiff-Appellee,

*versus*

VITAL PHARMACEUTICALS, INC.,
d.b.a. VPX Sports,
JOHN OWOC,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-61125-WPD

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and MARCUS, Circuit Judges.

PER CURIAM:

This appeal arises from a contract dispute between Balboa Capital Corporation ("Balboa"), which leases and finances commercial equipment, and Vital Pharmaceuticals, Inc. ("Vital"), which manufactures and produces sports and energy beverages and supplements. Balboa leased a machine to Vital for a specified period, after which Vital was required to notify Balboa of its intention to either return the machine or purchase it for its fair market value. If Vital failed to notify Balboa of its intentions, then at the end of the lease term, Vital had to buy the machine immediately. When, at the end of the lease term, Vital neither gave notice to Balboa nor paid the fair market value of the machine, Balboa sat on its contractual rights and did nothing for about three years.

After years of inaction, Balboa filed this suit and alleged that it was entitled to rental payments for the last three years *and* the fair market value of the machine. The district court determined that Vital owed Balboa only the fair market value of the machine, but it also awarded Balboa prejudgment interest and attorneys' fees. On appeal, Vital does not contest that Balboa is owed the fair market value of the machine but does challenge the award of prejudgment interest and attorneys' fees. We conclude that the district court did not err in awarding prejudgment interest or abuse

its discretion in awarding attorneys' fees under the terms of the Lease Agreement.  So we affirm the district court's challenged orders.

## I.    BACKGROUND

### A. Factual Background

Balboa and Vital entered into a Master Equipment Lease Agreement (the "Lease Agreement") on August 5, 2010.[1]  Under it, Vital leased a Bosch GKF1400L capsule-filling-and-closing machine (the "Equipment") for an initial period of fifty-nine months, at the monthly rate of $14,619.56, plus taxes (the "Initial Lease Term").

After the end of the Initial Lease Term, the Lease Agreement required Vital to either return the Equipment to or purchase the Equipment from Balboa.  According to the Lease Agreement, Vital had to notify Balboa of either intention 120 days before the end of the Initial Lease Term.  If Vital failed to provide timely notice, Vital would be deemed to have exercised its purchase option.  Once the purchase option was selected, the Lease Agreement required Vital to pay the fair market value of the Equipment "immediately" after the expiration of the Initial Lease Term.  App'x 47.  If for any reason the fair market value of the Equipment was not determined and

---

[1] The Lease Agreement also includes a Lease Schedule, which provides the specific terms and payment schedule for the piece of equipment Vital leased. For purposes of this opinion, the term "Lease Agreement" refers to the Master Equipment Lease Agreement and the Lease Schedule as one cumulative contract.

paid to Balboa at the end of the Initial Lease Term, the Lease Agreement required Vital to continue making the regular monthly lease payments to Balboa for each successive month until the fair market value was determined and Vital paid it.

And if Vital failed to make any payments or pay any amounts due under the Lease Agreement, then the Lease Agreement required Vital to pay interest to Balboa "from the due date until paid at the rate of one and one-half percent (1.5%) per month *or* the maximum amount permitted by applicable law, whichever is lower." App'x 31–32 (emphasis added). Vital also agreed to reimburse Balboa "on demand for any and all costs and expenses incurred by [Balboa] in enforcing its rights and remedies hereunder following the occurrence of an Event of Default, including, without limitation, Attorneys' Fees and Expenses." App'x 39. Section 10 of the Lease Agreement, in turn, defines an Event of Default. Among other circumstances, an Event of Default occurs if Vital fails "to make any payment due" under the Lease Agreement "within 5 days of its due date." App'x 37. Besides these provisions, Vital and Balboa agreed that "[t]he lease and the legal relations of the parties hereto shall in all respects be governed by and construed in accordance with the laws of the State of Connecticut." App'x 43.

For nearly the first five years of operating under the Lease Agreement, everything went well. Indeed, Vital made its first payment, which was due on September 27, 2010, and continued to make the required monthly payments until the Initial Lease Term ended in August 2015.

But before the Initial Lease Term expired, Vital failed to provide the required notice to Balboa of its intention to either purchase or return the Equipment. By the terms of the Lease Agreement, then, Vital's failure to give Balboa the required notice obligated it to purchase the Equipment for the fair market value.

Yet Vital made no effort to buy the Equipment. Nor did Balboa do anything from 2015 to 2018 to enforce the Lease Agreement's requirement that Vital purchase the Equipment. It was not until April 2018—nearly three years after the end of the Initial Lease Term—that Balboa sent a letter demanding that Vital and John Owoc, Vital's president, who guaranteed any payments due under the Lease Agreement, cure any defaults under the Lease Agreement.

At that time, Balboa demanded payment of $540,773.76. Balboa asserted Vital owed this amount for the following: (i) almost three years of rental payments for the period from August 2015 through April 2018, (ii) sales tax, and (iii) interest at 10% annum. On May 18, 2018, after Vital failed to pay the $540,773.76 Balboa demanded by the deadline Balboa stated in its letter, Balboa filed suit against Vital and Owoc (collectively, "Vital") in the Southern District of Florida, alleging breach of contract.

To date, Vital has not paid Balboa anything in connection with the Lease Agreement since the expiration of the Initial Lease Term.

6                    Opinion of the Court                    21-13263

### B. Procedural Background

At the district court, both Balboa and Vital moved for summary judgment. Balboa filed its Motion for Partial Summary Judgment seeking entry of summary judgment on the following issues: "(a) finding that [Vital is] in default under, and in breach of, the [Lease Agreement]; (b) awarding damages to Balboa pursuant to the terms of the [Lease Agreement] for rent, taxes, fees, interest, and late charges that have accrued, and that continue to accrue; and (c) recognizing that [Vital is] obligated to pay the in-place fair market value of the leased equipment to Balboa." App'x 85. In its filings, Balboa explained that Vital defaulted on the Lease Agreement by failing to pay the fair market value of the Equipment.

For its part, Vital alleged in its Motion for Summary Judgment that (1) the parties lacked a mutual understanding on the requirement to determine the fair market value of the Equipment; (2) Balboa was not entitled to a windfall by recovering rental payments *and* the fair market value of the Equipment; (3) under Connecticut law, Balboa's three-year delay in providing notice of an alleged default was unreasonable; and (4) the right to enforce a contract does not come into existence unless and until all conditions precedent are fulfilled, and Balboa failed to satisfy that requirement when it did not follow the agreed-upon appraisal procedure. Notably, Vital admitted that it was obligated to purchase the Equipment for fair market value but disputed that Balboa was also entitled to post-Initial Lease Term monthly rental payments.

The district court determined that the Lease Agreement was a valid contract and both parties failed to act to determine the fair market value for the Equipment. Because Balboa did not assert its interest in the Equipment for three years, the district court rejected Balboa's plea for rental payments on the machine from 2015 to 2018. Instead, the district court concluded that Vital was obligated to purchase the Equipment at the end of the Initial Lease Term, and Vital's failure to do so breached the Lease Agreement. Based on this determination, the district court granted partial summary judgment to Balboa and ordered the parties to have the Equipment appraised for the fair market value as if it had been purchased at the end of the Initial Lease Term. Once an arbitrator determined the fair market value of the Equipment, the district court instructed, Balboa was to "file a Motion to award the appraised value of the [Equipment], *plus interest, attorneys' fees*, and costs associated with filing this action." App'x 368 (emphasis added).

About eight months after the district court entered partial summary judgment for Balboa, Vital moved for limited relief from the court's order. Vital asked the district court to "(1) Appoint a Special Master to serve as an appraiser, or in the alternative, appoint a Special Master to choose an appraiser; (2) Find that the Lease Agreement, dated August 5, 2010 . . . between the parties was illusory and therefore vacate the award of fees and costs to [Balboa], since [it was] not the prevailing party; and (3) Vacate any award of pre-judgment interest on any amount determined by the appraiser." App'x 371–72. Vital argued that the district court

"erred in ruling that [Balboa] was the prevailing party entitled to fees and costs." App'x 375. In addition, Vital asserted that Balboa was not entitled to prejudgment interest because Florida law allowed for prejudgment interest awards on only those damages the amounts of which could be determined with certainty at the time of the breach, or at least before the entry of judgment, so Balboa's damages did not qualify. The district court denied Vital's motion.

Meanwhile, Vital and Balboa secured an arbitrator, and the arbitrator valued the Equipment at $275,000. That accomplished, Balboa moved for entry of final judgment on the fair market value of the Equipment, prejudgment interest, arbitration costs, post-judgment interest, and attorneys' fees and expenses. Balboa argued that prejudgment interest began to accrue in August 2015, and the applicable interest rate was 18% per annum. Balboa also urged the court to enter a judgment recognizing Vital's liability for reasonable attorneys' fees and costs incurred in connection with this matter.

Vital responded to Balboa's motion. In its response, it said,

Without waiving, for appellate purposes, their opposition to the entry of a final judgment in Plaintiff's favor, including the arguments raised both in opposition to Plaintiff's summary judgment request as well as in support of Defendants' summary judgment motion, Defendants do not contest the validity of the 18% annual pre-judgment interest rate.

App'x 525.  As for attorneys' fees, Vital opposed any such award. In Vital's view, Balboa was not entitled to fees because (1) it was not a "prevailing party" and (2) the express terms of the Lease Agreement did not entitle Balboa to recover attorneys' fees because no Event of Default had occurred.

The district court rejected Vital's position.  It instead entered final judgment in favor of Balboa and awarded Balboa the fair market value of the Equipment, prejudgment interest at 18% per annum, and attorneys' fees.

Vital moved to alter or amend the district court's final judgment and order.  In its motion, Vital argued that, according to Florida law, prejudgment interest started to accrue when the fair market value of the Equipment was determined rather than when the breach occurred.  The district court denied Vital's motion.

With that resolved, Balboa filed its Motion for Attorneys' Fees.  Balboa requested $101,927.24 in attorneys' fees and $5,075 for expenses and costs.  Vital responded that the Lease Agreement did not authorize Balboa to receive attorneys' fees because no Event of Default had occurred.  And Balboa was not otherwise entitled to fees, Vital contended, because it was not a "prevailing party" in the proceedings.

The district court referred Balboa's motion to a magistrate judge, who issued a report and recommendation recommending that the district court grant the motion.  In her report, the magistrate judge declined to address the merits of Vital's arguments

against the award of attorneys' fees because the district court repeatedly ruled that Balboa was entitled to attorneys' fees. Noting that Vital did not object to the amount of Balboa's claimed attorneys' fees and expenses, the magistrate judge determined that the fees request was reasonable, and Balboa was statutorily entitled to costs. So the magistrate judge recommended that the district court grant Balboa's motion. The district court later adopted the magistrate judge's recommendation and entered an award of $101,927.24 in attorneys' fees, expenses of $4,650, and costs of $425 to Balboa.

Vital now appeals the district court's final judgment and the award of attorneys' fees.[2]

_____

[2] Vital's notice of appeal stated that it was appealing the following orders: "(1) Order on Motion to Alter or Amend the Court's Final Judgment [DE 88] entered in this action on the 24th day of August, 2021, denying Defendant's Motion to Alter or Amend the Court's Final Judgment and Order Closing Case; and (2) Order Adopting Report of Magistrate Judge [DE 93] Snow's Report and Recommendation [DE 87] entered in this action on the 8th day of September, 2021, granting Plaintiff's Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs [DE 82]." App'x 820. On appeal, Vital asserts that it meant to appeal the Order Entering Final Judgment rather than the Order on the Motion to Alter or Amend. We "liberally construe the requirements of Rule 3" of the Federal Rules of Appellate Procedure. *Smith v. Barry*, 502 U.S. 244, 248 (1992). "[I]n this circuit, it is well settled that an appeal is not lost if a mistake is made in designating the judgment appealed from where it is clear that the overriding intent was effectively to appeal." *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 739 n.1 (5th Cir. 1980) (internal quotation marks omitted). Here, where the district court determined that Balboa was entitled to attorneys' fees and prejudgment interest accruing from the date of the breach, it is clear that Vital intended to appeal the entry of final judgment.

## II.  STANDARD OF REVIEW

In a civil action based on diversity of citizenship, whether a successful claimant is entitled to prejudgment interest presents a question of state law, *see AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1002–03 (11th Cir. 2007), and the district court's interpretation of state law is subject to *de novo* review, *see Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1304 (11th Cir. 2007).

Under Connecticut law, a decision to deny or grant interest is generally "an equitable determination and a matter lying within the discretion of the trial court." *Riley v. Travelers Home & Marine Ins. Co.*, 163 A.3d 1246, 1270 (Conn. App. Ct. 2017) (citation omitted).  But when a contract specifies that postmaturity interest accrues at a determined rate, the trial court is without discretion to decide not to award prejudgment interest. *Sikorsky Fin. Credit Union, Inc. v. Butts*, 108 A.3d 228, 233 (Conn. 2015) ("[A]n award of prejudgment and postjudgment interest on a loan that carries postmaturity interest is not discretionary; it is an integral part of enforcing the parties' bargain.  The trial court must, therefore, as part of any judgment enforcing a loan, allow prejudgment and postjudgment interest at the agreed rate . . .") (internal citations omitted).  And we review the district court's interpretation of that contract providing for postmaturity interest *de novo*. *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018).

We review an award of attorneys' fees for abuse of discretion. *See Bruno v. Whipple*, 283 A.3d 26, 38–39 (Conn. App. Ct.

2022).  "The district court has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning . . . ."  *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999) (internal quotation marks and citation omitted).  Under the abuse-of-discretion standard, "there will be occasions in which [the Court will] affirm the district court even though [it] would have gone the other way had it been [the Court's] call."  *Id.* (citation omitted).  "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."  *Id.* (citation omitted).

## III.  DISCUSSION

As an initial matter, a federal court sitting in a diversity action applies substantive state law using the choice-of-law rules of the forum state—in this case, Florida.  *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014).  "Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."  *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000).

Here, the Lease Agreement states that "[t]he Lease and the legal relations of the parties hereto shall in all respects be governed by and construed in accordance with the laws of the State of Connecticut, without regard to principles regarding the choice of law."  App'x 43.  The parties have offered no reason why interpreting the Lease Agreement under Connecticut law would violate "strong public policy" under Florida law.  Thus, we use Connecticut law to construe the Lease Agreement and the parties' rights under it.  And

we review *de novo* the district court's interpretation of the Lease Agreement and its applicability. *Americaribe-Moriarty*, 906 F.3d at 1335.

On appeal, Vital argues that the district court abused its discretion by awarding Balboa (1) prejudgment interest on the fair market value of the Equipment and (2) attorneys' fees. As we explain below, we disagree.

## A. Vital has forfeited or waived its challenges to the award of prejudgment interest.

Vital challenges the district court's award of prejudgment interest on three separate grounds. First, Vital argues that Balboa is not entitled to *any* prejudgment interest because Connecticut General Statutes § 37-3a governs this dispute, and it does not authorize prejudgment interest. Second, Vital contends that even if the district court could award prejudgment interest, the maximum interest rate allowed for a contract breach is 10% per annum. Third, if Balboa is entitled to 18% per annum interest under the Lease Agreement, Vital asserts that the district court abused its discretion by awarding prejudgment interest accruing from August 2015 to the present. We do not address the merits of any of these arguments because Vital has either forfeited or waived them. Because forfeiture and waiver pertain to the management of our adversarial system of adjudication, *see United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc), we apply federal law to determine whether Vital's arguments on this issue are foreclosed, *cf. Hanna v. Plumer*, 380 U.S. 460, 472–73 (1965) (explaining that

federal law applies in diversity actions to matters that "relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power").

Vital bases its first and third challenges on Connecticut General Statutes § 37-3a.[3] But in relation to prejudgment interest, Vital never mentioned either statute in the district court. And it is too late to do so now for the first time.

We have repeatedly held that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citation omitted). We are reluctant to hear issues like this one that are forfeited because "[i]f we were to regularly address questions . . . that district[ ] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.* Vital's case is no exception.

As we have mentioned, Vital never raised the applicability of Connecticut law or Connecticut General Statutes § 37-3a in the district court. So Vital failed to preserve this issue for appellate review. *See Stewart v. Dep't of Health & Hum. Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) ("Judicial economy is served and prejudice is

---

[3] Vital relies on Connecticut General Statutes § 37-3a. But when parties to a contract expressly and affirmatively provide for interest, the relevant interest statute is Connecticut General Statutes § 37-1. Either way, though, Vital never raised these statutes in the district court.

avoided by binding the parties to the facts presented and the theories argued below." (citation omitted)).

Vital responds that its opposition to prejudgment interest under the Connecticut statute is not a new *issue*; instead, Vital continues, it raises Connecticut General Statutes § 37-3a as a new *argument* in support of its opposition to prejudgment interest more generally. We are not persuaded. To be sure, we have explained that "[a]lthough new claims or issues may not be raised, new arguments relating to preserved claims may be reviewed on appeal." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 n.3 (11th Cir. 2008) (emphasis omitted). But whether Connecticut General Statutes § 37-3a prohibits the award of prejudgment interest under the Lease Agreement raises a different issue than the ones before the district court—whether Florida law or the Lease Agreement itself precludes prejudgment interest. When the issue is correctly framed, it is clear that Vital did not preserve it for appeal.

Vital urges us to exercise our discretion to entertain issues that have not been preserved for appeal. But we have identified only five situations where we may exercise our discretion to consider forfeited issues. *See Campbell*, 26 F.4th at 873. Those include the following: First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. *Id.* Second, the rule may be relaxed where the appellant raises an issue that the litigant had no opportunity to raise at the district-court level. *Id.* Third, the rule does not bar consideration by the

appellate court in the first instance where the interest of substantial justice is at stake. *Id.* Fourth, a federal appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt. *Id.* Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern. *Id.* None of these exceptions apply. Although Vital argues that it raises a "purely legal" argument, in these circumstances, no miscarriage of justice will result from our decision not to exercise our discretion to consider Vital's new arguments.

Because Vital failed to raise the issues of whether Balboa is entitled to interest under Connecticut General Statutes § 37-3a in the district court, Vital has forfeited those issues.

Next, as to Vital's contention that even if the district court could award prejudgment interest, the maximum interest rate allowed for a contract breach is 10% per annum, Vital has waived that issue.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (internal quotation marks and citation omitted). Federal courts do not have "*carte blanche* to depart from the principle of party presentation basic to our adversary system," and "it is an abuse of discretion for a court to override a party's deliberate waiver." *Campbell*, 26 F.4th at 872 (alteration adopted) (internal quotation marks and citation omitted). "Waiver directly implicates the power of the parties to control the course of the litigation; if a party

affirmatively and intentionally relinquishes an issue, then courts must respect that decision." *Id.* Though we do not have many cases discussing when a party has waived an issue, we have said that waiver requires a clear and affirmative statement. *Id.* at 874.

And here Vital made a clear and affirmative statement about the 18% interest rate in the district court. After the arbitrator determined the fair market value of the Equipment, Balboa filed a Motion for Entry of Final Judgment asserting that it was entitled to the fair market value of the Equipment and prejudgment interest at 18% accruing from the date of the breach. Rather than contesting Balboa's arguments in favor of awarding prejudgment interest at 18%, Vital made the following statement:

> Without waiving, for appellate purposes, their opposition to the entry of a final judgment in Plaintiff's favor, including the arguments raised both in opposition to Plaintiff's summary judgment request as well as in support of Defendants' summary judgment motion, Defendants do not contest the validity of the 18% annual pre-judgment interest rate.

App'x 525. The plain meaning of this statement is that, for the purposes of final judgment, Vital affirmatively waived any challenges it had to the prejudgment-interest award that it did not previously assert in the district court. The district-court record reveals that Vital never disputed that the appropriate prejudgment interest rate was 18%; it challenged only the general award of prejudgment interest. And it stated that it was not challenging the 18% rate. In

other words, Vital affirmatively chose to agree to 18% as the applicable rate if the courts determine that prejudgment interest applies.

## B.  *The district court did not abuse its discretion by awarding attorneys' fees.*

The district court also granted Balboa's motion for attorneys' fees and costs.  On appeal, Vital challenges the district court's award of attorneys' fees on two bases: (1) that an Event of Default did not occur to trigger the attorneys' fees provision in the Lease Agreement, and (2) even if the district court could enter an award of attorneys' fees, Balboa failed to establish that it was the prevailing party in the district court action.  Once again, we are not persuaded.

### 1.  Because an Event of Default occurred, Balboa is entitled to attorneys' fees.

Vital first argues that Balboa is not entitled to an award of attorneys' fees under the Lease Agreement because an Event of Default did not occur.  According to Vital, the Lease Agreement predicated the award of attorneys' fees and costs upon the occurrence of an Event of Default, but an Event of Default was not "adjudicated to have occurred here."  Appellants' Br. 22.  We disagree.

We review the district court's *ultimate award* of attorneys' fees for abuse of discretion, but we review the district court's interpretation of contractual provisions *de novo*.    *Americaribe-Moriarty*, 906 F.3d at 1335.  In Connecticut, a contract term may provide for the recovery of attorneys' fees and costs.  *Total Recycling Servs. of Conn., Inc. v. Conn. Oil Recycling Servs., LLC*, 63 A.3d 896, 904

(Conn. 2013). And "[t]he interpretation and construction of [that] written contract present only questions of law, within the province of the court." *Gould v. Mellick & Sexton*, 819 A.2d 216, 222 (Conn. 2003) (internal quotation marks and citation omitted).

Section 11(b) of the Lease Agreement states that "Lessee agrees to reimburse Lessor on demand for any and all costs and expenses incurred by Lessor in enforcing its rights and remedies hereunder following the occurrence of an Event of Default, including, without limitation Attorneys' Fees and Expenses." App'x 39. Section 10 of the Lease Agreement, in turn, defines "Event of Default." According to Section 10(a), an Event of Default occurs when "Lessee . . . fail[s] to make any payment due in respect of any Lease within 5 days of its due date." App'x 37.

As we have noted, at the conclusion of the Initial Lease Term, Vital was required to purchase the Equipment for fair market value and payment for the Equipment was due "immediately" upon the expiration of the Lease Agreement. The Initial Lease Term expired in August 2015, and by the time Balboa filed this action in May 2018, Vital had not made any payment to Balboa for the fair market value of the Equipment. Without a doubt, then, Vital did not make the required payment "immediately upon the expiration of the Lease." App'x 47. Nor, of course, did Vital purchase the Equipment within 5 days of its due date. So under Section 10(a), an Event of Default occurred that entitled Balboa to attorneys' fees.

We reject Vital's argument that an Event of Default needed to be explicitly adjudicated by the district court. Nothing in the Lease Agreement requires a formal adjudication for what otherwise satisfies the definition of "Event of Default" to qualify as an Event of Default under the Lease Agreement. We therefore agree that Balboa is entitled to attorneys' fees based on the terms of the Lease Agreement.

2. <u>Balboa is not required to show that it was a prevailing party, but even if it were, Balboa prevailed in the district court.</u>

We also reject Vital's argument that Balboa is required to show it was a prevailing party to be awarded attorneys' fees.

It is well settled that a prevailing party may recover attorneys' fees only if a statute or the governing contract authorizes them. *Premier Cap., Inc. v. Grossman*, 887 A.2d 887, 891 (Conn. App. Ct. 2005); *see also Total Recycling*, 63 A.3d at 904 ("[I]n the absence of statutory or contractual authority to the contrary, a successful party is not entitled to recover attorney's fees or other ordinary expenses and burdens of litigation." (internal quotation marks and citation omitted)). When fees are authorized by statute, Connecticut courts have explained that a losing party must pay the attorney's fees of its adversary only when its adversary is considered a prevailing party in the technical sense. *See, e.g.*, *Retained Realty, Inc. v. Spitzer*, 643 F. Supp. 2d 228, 232, 238–40 (D. Conn. 2009) (explaining that under Conn. Gen. Stat. § 42–150bb, the borrower

was the prevailing party at the trial court and was entitled to attorney's fees).

But the prevailing-party standard and its legal definition are inapplicable here because Balboa does not rely on any statute for fees. Rather, Balboa relies strictly on the agreed-upon attorneys' fees provision in the Lease Agreement. So we consult only the Lease Agreement in determining whether Balboa is entitled to fees. *Total Recycling*, 63 A.3d at 904–05 ("In reviewing a claim that attorney's fees are authorized by contract, we apply the well established principle that a contract must be construed to effectuate the intent of the parties, which is determined from its language interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (cleaned up)).

Plus, even if Balboa were required to establish it was a prevailing party, Balboa has done so. Under Connecticut law, "[t]o be a prevailing party does not depend upon the degree of success at different stages of the suit; but upon whether at the end of the suit or other proceeding, the party, who has made a claim against the other, has successfully maintained it. If he has, he is the prevailing party." *Premier Cap.*, 887 A.2d at 892 (citation omitted). Similarly, for purposes of awarding costs, "[a] party need not prevail on all issues to justify a full award." *Id.* at 893. Indeed, "if the prevailing party obtains judgment on even a fraction of the claims advanced, or is awarded only nominal damages, the party may nevertheless be regarded as the prevailing party and thus entitled to an award of costs." *Russell v. Russell*, 882 A.2d 98, 107 (Conn. App. Ct. 2005)

(citation omitted). Balboa argued that it was owed rental payments *and* the fair market value of the Equipment. The district court agreed that Balboa was owed the fair market value of the Equipment, and the district court granted Balboa summary judgment as to this issue. The district court also ordered Vital to pay Balboa the fair market value of the Equipment, including prejudgment interest. Without a doubt, Balboa was therefore the prevailing party.

\*      \*      \*

In sum, Balboa is entitled to attorneys' fees and costs, and the district court did not abuse its discretion in granting Balboa's motion for attorneys' fees.

## IV.    CONCLUSION

For the reasons we've explained, Vital has failed to show that the district court abused its discretion. We therefore affirm the district court's order entering final judgment and its order awarding Balboa attorneys' fees and costs in connection with this matter.

**AFFIRMED**.